| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Cr. No. 08-10251-MLW |
| v. | ) | |
| | ) | |
| | ) | |
| BORIS LEVITIN, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

WOLF, D.J.                                             May 2, 2024

I.    SUMMARY

In 2008, defendant Boris Levitin was charged with participating in a scheme to use the mails to defraud Dunkin Brands, Incorporated ("Dunkin") by providing his co-defendant Carolyn Kravetz, a Dunkin employee, with invoices for work never performed, accepting payments for those invoices, and kicking back half the total payments to Kravetz. Pursuant to a plea agreement, Levitin pled guilty to six counts of committing mail fraud and waived his right to appeal or collaterally challenge his conviction or sentence of 32 months of probation.

Several years after his conviction became final Levitin filed a petition seeking to vacate his conviction and sentence based on his alleged actual innocence. In essence, Levitin argues that the Indictment did not allege conduct constituting a crime and, in any event, did not give him constitutionally fair notice of the charges against him.

For the reasons explained in this Memorandum, the petition is not meritorious. Therefore, it is being denied.

## II.   PROCEDURAL HISTORY

As indicated earlier, in 2008, a grand jury charged Levitin with six counts of mail fraud. See Indictment ¶13 (Dkt. No. 1). The Indictment alleged a scheme in which Kravetz, an employee of Dunkin conspired with Levitin to defraud Dunkin. More specifically, the Indictment alleged that:

> From in or about August 2004 and continuing until in or about October 2005, KRAVETZ and LEVITIN devised and executed a scheme to defraud Dunkin' Brands, as follows:
>
> KRAVETZ agreed to steer Dunkin' Brands business to LEVITIN's company and LEVITIN agreed to kick back to KRAVETZ one-half of his gross receipts from Dunkin' Brands. KRAVETZ then authorized payments from Dunkin' Brands to LEVITIN's company totaling approximately $396,875, including payment in full for multiple projects on which LEVITIN had performed no work. In turn, LEVITIN kicked back to KRAVETZ approximately $198,437.50.[1]

Indictment ¶8 (emphasis added).

Counts One through Six of the Indictment were charged in paragraph 13, which stated that:

> The Grand Jury re-alleges and incorporates by reference paragraphs 1-12 of this Indictment and further charges that on or about the dates set forth below, in the District of Massachusetts, defendants,

---

[1] Paragraphs 9, 10, and 11 of the Indictment added allegations concerning the execution of the scheme.

2

**CAROLYN KRAVETZ and
BORIS LEVITIN,**

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises concerning material facts and matters, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly cause matter and things to be delivered by the United States Postal Service according to the directions thereon, matter and things, as follows:

| COUNT | APPROX. DATE | MAILING |
|---|---|---|
| ONE | 9/15/04 | Check in the amount of $47,300 made payable to Luminophore Inc. and mailed from Moore Wallace North America, Inc., 1 Poplar Street, Thurmont, MD 21788. |
| TWO | 6/15/05 | Check in the amount of $81,350 made payable to Luminophore Inc. and mailed from Moore Wallace North America, Inc., 1 Poplar Street, Thurmont, MD 21788. |
| THREE | 7/27/05 | Check in the amount of $89,675 made payable to Luminophore Inc. and mailed from Moore Wallace North America, Inc., 1 Poplar Street, Thurmont, MD 21788. |
| FOUR | 8/10/05 | Check in the amount |

3

|      |         |                                                                                                                                                   |
|------|---------|---------------------------------------------------------------------------------------------------------------------------------------------------|
|      |         | of $34,775 made payable to Luminophore Inc. and mailed from Moore Wallace North America, Inc., 1 Poplar Street, Thurmont, MD 21788.                |
| FIVE | 9/21/05 | Check in the amount of $10,600 made payable to Luminophore Inc. and mailed from Moore Wallace North America, Inc., 1 Poplar Street, Thurmont, MD 21788. |
| SIX  | 11/9/05 | Check in the amount of $133,175 made payable to Luminophore Inc. and mailed from Moore Wallace North America, Inc., 1 Poplar Street, Thurmont, MD 21788. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

Indictment ¶13.

The language in paragraph 13 of the Indictment alleged all the elements of the mail fraud statute, 18 U.S.C. §1341. <u>See</u> First Circuit Pattern Jury Instruction 4.18.1341. The incorporated earlier allegations described the scheme to defraud as one intended to cause Dunkin to pay money for purported work that was not performed.

4

The Magistrate Judge denied Levitin's Motion for a bill of particulars. See Dkt. No. 28. In doing so, he stated that "[t]he factual allegations of the Indictment (coupled with discovery) make sufficiently clear the theories encompassed by the fraud charges to enable defendant to prepare, to avoid surprise and to protect against double jeopardy." Id. at 2.

Levitin subsequently moved to dismiss the Indictment "for failure to plead essential facts and elements with sufficient specificity to allege an offense." Dkt. No. 34 at 1. In a Memorandum in Support of the Motion, Levitin argued that the Indictment "fail[ed] to allege 'the essential facts constituting the offense.'" Dkt. No. 35 at 3 (quoting Fed. R. Crim. P. 7(c)(1)). Levitin asserted that he did not know what the underlying crime was and, therefore, could not "know or defend" against it. Id.

At a hearing on the motion to dismiss, Levitin's counsel argued that the Indictment was vague and "fail[ed] to allege a cognizable violation of [§1341]." Oct. 15, 2009 Hr'g Tr. 4:14-15 (Dkt. No. 134). He contended that the Indictment "merely parrot[ed] the statutory language" and failed to "notify [Levitin] as to what he did that's purportedly illegal," id. 6:1-11, and that he did not know "what theories to prepare for" at trial, id. 26:10-11. The presiding Judge, Joseph Tauro,

stated that the Indictment provided Levitin with notice of an alleged "[c]lassic insider/outsider kickback scheme to defraud," id. 26:15, and denied the motion to dismiss, see Dkt. No. 44.

On January 28, 2010, the government filed a stipulation stating that:

> [I]t will not rely on a theory that defendants' actions deprived defendant Carolyn Kravetz's employer of the intangible right of her honest services, under 18 U.S.C. §1346, in any phase of this case. Under this stipulation, the United States will not seek a jury instruction regarding the deprivation of the intangible right of honest services in the trial of this case, nor argue a theory of the deprivation of the intangible right of honest services to the jury.

Dkt. No. 63.

Levitin subsequently entered into a plea agreement with the government. Dkt. No. 64. In it, among other things, he "expressly and unequivocally admit[ted] that he committed the crimes charged in Counts One through Six of the Indictment, did so knowingly, and is in fact guilty of those offenses." Id. at 1. In his plea agreement, Levitin also waived his right to appeal and acknowledged that he had conferred with his attorney and that he understood that he might, in some circumstances, be able to argue that his conviction should be set aside by way of a collateral challenge, but that he waived any right to challenge his conviction through such a collateral challenge. Id. at 5-6.

Judge Tauro questioned Levitin about his plea agreement at a Rule 11 hearing. See Feb. 24, 2010 Hr'g Tr. (Dkt. No. 83). Among other things, Levitin acknowledged his understanding that he was waiving any right to appeal or collaterally challenge his conviction or sentence. Id. at 9.

In the sentencing memorandum filed by counsel on his behalf, Levitin "accept[ed] unconditional blame for the serious fraud offenses of which he stands convicted." Dkt. No. 146 at 1. The memorandum also stated that Levitin had "escalat[ed] the fraud when he had a prime opportunity to expose and end it." Id. at 17.

On November 15, 2010, Levitin and Kravetz were sentenced to 32 months of probation. Judgment was entered on November 17, 2010. See Dkt. No. 106. Levitin did not file a notice of appeal. Therefore, his conviction became final on December 1, 2010, fourteen days after Judgment was entered.

On July 11, 2013, Levitin filed this motion to vacate his conviction pursuant to 28 U.S.C. §2255. See Dkt. No. 151.

III. DISCUSSION

28 U.S.C. §2255 provides a person in custody with a means to collaterally attack and vacate his conviction and sentence.[2]

---

[2] Levitin was on probation when he filed his petition on July 11, 2013. He has long since completed his sentence. However, as he

Relief may be granted under §2255 if, among other things, "the sentence was imposed in violation of the Constitution or laws of the United States" or "the court was without jurisdiction to impose such sentence." 28 U.S.C. §2255; see Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).

Levitin contends that the conduct alleged in the Indictment, and to which he pled guilty, was not criminal. See Mem. in Supp. of Pet. at 1-2 (Dkt. No. 155). Therefore, Levitin argues, the court lacked jurisdiction and sentenced him in violation of the laws of the United States. See id. There are several procedural obstacles that Levitin must overcome to have his claim decided on the merits. As explained below, he has not done so.

First, Levitin did not raise his claims on appeal. Absent extraordinary circumstances, "[i]f a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted." Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005) (citing Bousley v. United States, 523 U.S. 614, 621 (1998)); see also Goldman v. Winn, 565 F.Supp.2d 200, 213 (D. Mass. 2008).

---

was in custody when he filed the petition, he is eligible to pursue relief under §2255. See 28 U.S.C. §2255(a). This case was stayed for many years at Levitin's request because of his ill health. See Dkt. Nos. 180, 181.

Second, pursuant to §2255(f), Levitin was required to file his petition within one year of "the date on which the judgment of conviction [became] final," meaning by December 1, 2011. 28 U.S.C. §2255(f)(1). Levitin filed his petition on July 11, 2013. Therefore, absent extraordinary circumstances, the petition is time-barred. See, e.g., Barreto-Barreto v. United States, 551 F.3d 95, 101 (1st Cir. 2008); McQuiggin v. Perkins, 569 U.S. 383, 386-87 (2013).

Third, in his plea agreement Levitin knowingly and voluntarily waived his right to challenge his conviction or sentence on direct appeal or collaterally. Plea Agreement at 5-6 (Dkt. No. 64). Such a waiver must be enforced except where it would work a miscarriage of justice. See United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008); United States v. Newbert, 504 F.3d 180, 182 (1st Cir. 2007).

Notwithstanding these procedural obstacles, "a federal habeas petition will be allowed to go forward if the petitioner can show . . . that he is actually innocent." Oakes, 400 F.3d at 95 (failure to appeal); see also McQuiggin, 569 U.S. at 392 (time-barred claim); Barreto-Barreto, 551 F.3d at 102 (time-barred claim); Bousley, 523 U.S. at 621, 624 (failure to

challenge validity of guilty plea on appeal); Goldman, 565
F.Supp.2d at 214.[3]

Levitin claims that he is actually innocent, and that not
vacating his conviction and sentence would constitute a
miscarriage of justice. Mem. in Supp. of Pet. at 17-19. Actual
innocence requires a petitioner to show "factual innocence, not
mere legal insufficiency." Bousley, 523 U.S. at 623; Barreto-
Barreto, 551 F.3d at 102. Usually, doing so requires the
presentation of reliable new evidence that was not presented at
trial. See Schlup v. Delo, 513 U.S. 298, 324 (1995); Riva v.
Fico, Civ.No. 01-12061-MLW, 2014 WL 4165364, at *3 (D. Mass.
Aug. 21, 2014), aff'd, 803 F.3d 77 (1st Cir. 2015); Goldman, 565
F.Supp.2d at 229. Levitin, however, does not rely on any new
evidence.

Rather, Levitin relies on the Supreme Court's holding that
"conviction and punishment [] for an act that the law does not
make criminal . . . inherently results in a complete miscarriage
of justice and presents exceptional circumstances that justify

---

[3] Proving cause and prejudice is an alternative means of
overcoming such procedural obstacles. See, e.g., Oakes, 400 F.3d
at 95; Bousley, 523 U.S. at 615. However, Levitin does not seek
relief based on cause and prejudice. Levitin argues that he
"need not demonstrate cause and prejudice . . . [because] no
theory of conviction was articulated in the indictment . . . and
the conduct to which [he] admitted in his plea simply does not
amount to the crime charged under any theory." Memorandum in
Support of Petition at 26 (emphasis in original).

collateral relief under §2255." Davis v. United States, 417 U.S. 333, 346-47 (1974) (internal quotation marks omitted) (quoted in Mem. in Supp. of Pet. at 2). In Davis, the Court found that the Selective Service Act as interpreted by the Ninth Circuit after Davis's conviction for disobeying a military induction order became final rendered the order invalid and "he could not be lawfully convicted for failure to comply with that order." Davis, 417 U.S. at 346. More recently, in a death penalty case in which there was a change in the interpretation of the relevant constitutional law, the Supreme Court reiterated that "[a] conviction under an unconstitutional law 'is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment.'" Montgomery v. Louisiana, 577 U.S. 190, 203 (2016) (quoting Ex parte Siebold, 100 U.S. 371, 376-77 (1879)).

This principle has been applied in mail fraud cases since the Supreme Court reinterpreted the standards for honest services fraud in Skilling v. United States, 561 U.S. 358 (2010). In United States v. Lynch, the court found that the defendants had been convicted on a theory of honest services fraud that was no longer viable after Skilling. 807 F.Supp.2d 224, 231-33 (E.D. Pa. 2011). Therefore, it granted the §2255 petition, reasoning that "where an indictment fails to allege any criminal conduct, a petitioner is excused from the showing

11

of actual innocence." Id.; see also United States v. Panarella, Crim. No. 00-655, 2011 WL 3273599, at *7-8 (E.D. Pa. Aug. 1, 2011).

This, however, is not a comparable case. As explained earlier, the government stipulated that it was not relying on a theory of honest services fraud to obtain Levitin's conviction before he pled guilty. See Stipulation (Dkt. No. 63). Levitin knew this. It is evident from the record that Levitin was not convicted of honest services mail fraud.

Levitin's contention that he was not convicted of any other viable theory of mail fraud is not correct. In this case, Levitin pled guilty to conventional charges of intentionally engaging with Kravetz in a scheme to defraud Dunkin of money. Indictment ¶¶8, 13; Plea Agreement ¶1. The Indictment also charges the alternative means of proving mail fraud,[4] obtaining money by means of false pretenses concerning a material fact-- the submission of invoices for work never performed, the payment to Levitin on those invoices, and Levitin kicking back half of the payments from Dunkin to Kravetz. Indictment ¶¶8, 13.

---

[4] As the First Circuit has written "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means." United States v. Pena, 24 F.4th 46, 75 (1st Cir. 2022) (internal quotation marks and citation omitted).

In the First Circuit, to prove mail fraud, the government must prove beyond a reasonable doubt:

> First, that there was a scheme, substantially as charged in the indictment, to defraud [or to obtain money or property by means of false or fraudulent pretenses];
>
> Second, that the scheme to defraud involved the misrepresentation or concealment of a material fact or matter [or the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter];
>
> Third, that [defendant] knowingly and willfully participated in this scheme with the intent to defraud; and
>
> Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, [defendant] caused the United States mail to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail would be used, on or about the date alleged.

First Circuit Pattern Jury Instruction 4.18.1341 (brackets in original).

In essence, by charging that, with intent to defraud, Levitin provided Kravetz invoices for work that was never performed, accepted payments on those invoices, and kicked back half of those payments to Kravetz, thus depriving Dunkin of money it should not have paid and lost, the Indictment charged both forms of the offense. Levitin knowingly and voluntarily pled guilty to both. Such conduct constitutes mail fraud. See, e.g., United States v. Reda, 787 F.3d 625, 626-27 (1st Cir. 2015) (affirming mail fraud convictions related to scheme in

13

which investment managers invested in "penny stocks at premium prices in return for 50% kickbacks concealed through phony consulting agreements"). Therefore, the court had jurisdiction to accept the plea and to sentence Levitin for engaging in conduct that was criminal.

Levitin also claims that the Indictment did not give him the constitutionally-required fair notice of the charges against him. Mem. in Supp. of Pet. at 6. This claim was rejected by the trial judge and not appealed. This court finds that decision was correct. As the First Circuit has written:

> Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." The Supreme Court has instructed that an indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and enables him to enter a plea without fear of double jeopardy. Hamling v. United States, 418 U.S. 87, 117 (1974); accord, United States v. Serino, 835 F.2d 924, 929 (1st Cir. 1987). The indictment may incorporate the words of the statute to set forth the offense, but the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487 (1888)). An indictment for conspiracy, however, need not allege the predicate offense with the same precision as the substantive count. Wong Tai v. United States, 273 U.S. 77, 81 (1927); United States v. Fusaro, 708 F.2d 17, 23 (1st Cir. 1983).

United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993).

14

In Yefsky, the First Circuit found the indictment alone to provide insufficient notice because the defendant "could not be expected to defend himself from a charge of conspiring to join a conspiracy to perpetrate a fraud if the indictment did not identify the fraud that was the ultimate underlying offense." Id. However, the court found that Yefsky received "ample notice before trial of the facts underlying [the alleged conspiracy]" and, therefore, the defect in the indictment was harmless. Id. at 894.

In contrast, as explained earlier, the Indictment in this case provided Levitin with the required fair notice of the theories of the case and the essential facts on which the grand jury relied. Specifically, the indictment alleged that Levitin, acting with the intent to defraud Dunkin, provided Kravetz with invoices for work that was not performed, accepted payment for them, and kicked back half of those payments to Kravetz. In addition, as the Magistrate Judge found, the discovery Levitin received provided additional information on the theories encompassed by the fraud charges. See Dkt. No. 28 at 2-3. Moreover, and importantly, any failure to provide fair notice would be a "mere legal insufficiency" that is inadequate to show the "factual innocence" necessary to overcome the procedural

15

obstacles to obtaining relief under §2255. See Bousley, 523 U.S.
at 623; Barreto-Barreto, 551 F.3d at 102.

IV.   ORDER

In view of the foregoing, it is hereby ORDERED that
Levitin's Motion Pursuant to §2255 (Dkt. No. 151) is DENIED.



UNITED STATES DISTRICT JUDGE

16